UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAYOMASHELL DAVID AGUILAR,<br><br>       Petitioner,<br> v.<br><br>RENEE BAKER, et al.,<br><br>       Respondents. | Case No. 3:12-cv-00315-MMD-VPC<br><br>ORDER |

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by Dayomashell David Aguilar, a Nevada prisoner. On June 30, 2015, respondents filed a motion to dismiss various claims from Aguilar's second amended habeas petition (dkt. no. 28), arguing that claims are untimely and/or procedurally defaulted. (Dkt. no. 59.) Respondents also argue that one ground (Ground 7) must be dismissed under *Stone v. Powell*, 428 U.S. 465 (1976). This order decides respondents' motion.

I.   PROCEDURAL BACKGROUND[1]

On October 10, 1997, a jury in the state district court for Clark County, Nevada, found Aguilar guilty of conspiracy to commit murder, first degree murder with use of a deadly weapon, possession of firearm by ex-felon, discharging firearm at or into structure (two counts), and discharging firearm at or into vehicle. After a penalty phase hearing on October 15, 1997, the jury sentenced Aguilar to life with the possibility of

---

[1]This procedural background is derived from the exhibits located at dkt. nos. 13-18, 29-30, and 44, and from this Court's own docket entries.

parole on the first degree murder count. On December 8, 1997, the state district court sentenced Aguilar to various terms of years on the remaining counts. A judgment of conviction was entered on January 9, 1998. Aguilar filed a timely notice of appeal.

On December 20, 1999, the Nevada Supreme Court entered an order affirming Aguilar's convictions. Aguilar filed his first state habeas corpus petition on September 8, 2000. On January 29, 2007, Aguilar petitioned the Nevada Supreme Court to direct the state district court to set his habeas case for hearing. After holding hearings on the petition, the state district court entered an order denying relief on February 8, 2008. Aguilar appealed.

On September 5, 2008, the Nevada Supreme Court reversed the denial of Aguilar's petition and remanded the case back to the state district court for appointment of counsel and a new evidentiary hearing.

After appointment of counsel, allowing Aguilar to supplement his petition, and holding an evidentiary hearing, the state district court entered an order denying relief on March 1, 2011. Aguilar appealed. On May 19, 2012, the Nevada Supreme Court affirmed the lower court, then issued a remittitur on June 4, 2012.

Aguilar initiated this federal habeas proceeding on June 5, 2012. With assistance of counsel, Aguilar filed amended petitions on December 12, 2012, and July 28, 2013. Then, on August 5, 2014, this Court granted Aguilar a stay to complete state court exhaustion of his unexhausted claims. On October 16, 2014, the Nevada Supreme Court entered an order affirming the lower court's determination that the claims in Aguilar's second state habeas petition were procedurally defaulted.

This proceeding was re-opened on February 3, 2015.

## II.   TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's state

court conviction became final (by either the conclusion of direct appellate review or the expiration of time for seeking such review). *Id.* Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending. 28 U.S.C. § 2244(d)(2).

Respondents concede that Aguilar filed his initial petition and his first amended petition within the one-year filing period under § 2244(d)(1). Respondents argue, however, that Aguilar's second amended petition was untimely and claims contained therein that do not relate back to the earlier-filed petitions are time-barred. The claims respondents identify as falling into this category are Grounds One, Two, Three, Eleven, and Twelve(B), (C)(1-3, 5).

The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly limits a habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition and, therefore, be considered timely under 28 U.S.C. § 2244(d). In *Mayle*, the Court held that the Ninth Circuit's former relation-back standard under Federal Rule of Civil Procedure 15(c)(2) (now Rule 15(c)(1)(B)),[1] which allowed an amendment to a habeas petition to "relate back" to the date of the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence," was too broad. *Id.* at 656-57. The Court held that an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with claims contained in the original petition. *Id.* at 663-64. The common core of operative facts must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R. Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief. *Id.* at 661.

A.  **Ground One**

In Ground One, Aguilar alleges a violation of his constitutional rights arising from the trial court's rejection of a proposed jury instruction on his theory of the

---

[1] Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic purposes only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

3

defense. According to Aguilar, the instruction would have provided guidance with respect to evidence to be considered in determining the element of premeditation. This claim shares a common core of operative facts with Claim One in Aguilar's first amended petition. Thus, the claim relates back to that pleading and is timely.

### B. Ground Two

In Ground Two, Aguilar alleges a violation of his constitutional rights due to improper jury instructions for premeditation, willfulness, and deliberation. The claim advances two distinct federal law theories for relief: (1) the jury instructions used by the trial court relieved the State of its burden of proving all the elements of first degree murder (Ground Two(A)) and (2) the Nevada Supreme Court violated Aguilar's right to due process by not apply its holding in *Byford v, State*, 994 P.2d 700, 712 (Nev. 2000), to his case (Ground Two(B)).

Aguilar contends that Ground Two relates back to Claim Five in his first amended petition. The Court agrees, but only as to the first theory noted above. The first theory above and Claim Five in the first amended petition are both based on the allegation that the jury instructions used by the trial court failed to clarify the elements necessary to prove first degree murder. Nowhere in the earlier-filed petitions, however, did Aguilar claim error based on the Nevada Supreme Court's failure to apply *Byford* to his case. Thus, Ground Two(A) relates back to the first amended petition, but Ground Two(B) is time-barred.

### C. Ground Three

In Ground Three, Aguilar alleges a violation of his constitutional rights due to the trial court's failure to properly instruct the jury on the *mens rea* necessary to find him liable for murder. In particular, he claims that the trial court failed to instruct the jury of the *mens rea* required to find him liable as an aider or abettor to murder and that the trial court's instructions on co-conspirator liability did not indicate that the jury needed to find that he harbored the specific intent to commit a first-degree murder.

///

Ground Three does not share a common core of operative facts with any claims raised in Aguilar's earlier petitions. Thus, the claim does not relate back and is time-barred.

### D. Ground Twelve(B)

In Ground Twelve(B), Aguilar alleges that he received ineffective assistance of appellate counsel, in violation of his constitutional rights, because counsel failed to ensure that the Nevada Supreme Court applied the *Byford* decision to Aguilar's case before his conviction became final. Aguilar argues that this claim relates back to Claims Five and Eighteen(A) in his first amended petition.

As noted above, Claim Five is based on the allegation that the jury instructions used by the trial court failed to clarify the elements necessary to prove first degree murder. Claim Eighteen(A) faults appellate counsel for failing to federalize various claims on direct appeal, but makes no reference whatsoever to appellate counsel's failure to present a *Byford* issue. Ground Twelve(B) does not share a common core of operative fact with either claim and is, therefore, time-barred.

### E. Ground Twelve(C)(1)

In Ground Twelve(C)(1), Aguilar alleges that he received ineffective assistance of appellate counsel because counsel failed to raise the issue contained in Ground One, discussed above. Aguilar presented a nearly identical claim under Ground Eighteen(B)(1) in his first amended petition. Thus, Ground Twelve(C)(1) relates back to that petition and is timely.

### F. Ground Twelve(C)(2-3)

In Ground Twelve(C)(2-3), Aguilar alleges he received ineffective assistance of appellate counsel because counsel failed to raise the issues contained in Ground Three, discussed above. Aguilar argues that this claim relates back to Claim Sixteen in his first amended petition.

Claim Sixteen is an ineffective assistance of counsel claim that contains several pages alleging numerous errors and omissions on the part of Aguilar's *trial* counsel.

The claim contains a single sentence referencing appellate counsel which broadly alleges that counsel "failed to raise meritorious claims before the Nevada Supreme Court, so as to establish every element of the case and issues on David's direct appeal and failed to put on a zealous and loyal representation on behalf of David." (Dkt. no. 12 at 38.) Thus, Claim Sixteen does not contain the core of operative facts that support Ground Twelve(C)(2-3).

Ground Twelve(C)(2-3) does not relate back to an earlier-filed petition and is time-barred.

### G.   Grounds Eleven, Twelve(C)(5), and any other untimely claim

Aguilar concedes that Grounds Eleven and Twelve(C)(5) are untimely, but argues that his actual innocence overcomes the expiration of the statute of limitations as to these and any other time-barred claim in his second amended petition.

In *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013), the Supreme Court held that actual innocence, if proved, serves as a gateway through which a petitioner may bypass the expiration of the AEDPA statute of limitations. 133 S.Ct. at 1934. Under *Schlup v. Delo*, 513 U.S. 298 (1995), "actual innocence" is established when, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-28). The petitioner must establish his factual innocence of the crime, and not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003).

Aguilar argues that he is actually innocent because the Nevada Supreme Court has invalidated all three of the legal theories on which the State sought to hold Aguilar responsible for first-degree murder. Specifically, he cites to the following cases: *Byford v. State*, 994 P.2d at 712-14 (change to definition of premeditated/ deliberate murder); *Sharma v. State*, 56 P.3d 868 Nev. 2002) (change to definition of aiding and abetting); and *Bolden v. State*, 922, 124 P.3d 91, 200 (Nev. 2005) (change to definition of co-conspirator liability).

This argument is without merit. To begin with, there remains no question that *Byford* does not apply retroactively to cases (like Aguilar's) in which the conviction was final prior to the *Byford* decision. *See Babb v. Lozowsky*, 719 F.3d 1019, 1028 (9th Cir. 2013) (citing *Nika v. State*, 198 P.3d 839, 850 (2008)). In addition, *Schlup* makes it eminently clear that a petitioner seeking to have procedurally defaulted claims heard on the merits pursuant to the actual innocence gateway must support his claim with "new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324.

Here, the only new evidence Aguilar points to is "evidence that the gun that killed the victim can be traced back to [a police officer]." (Dkt. no. 61 at 11.) He concedes in his petition, however, that "the bullet that struck the victim was never identified as coming from any particular weapon." (Dkt. no. 28 at 18.) Thus, the "new evidence" Aguilar relies upon supports only a theory and falls well short of showing that this is one of those "extraordinary" cases in which the *Schlup* standard has been met. *See House v. Bell*, 547 U.S. 518, 538 (2006).

Accordingly, Grounds Eleven and Twelve(C)(5) are time-barred.

### III. PROCEDURAL DEFAULT DOCTRINE

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the United States Supreme Court held that a state prisoner's failure to comply with the state's procedural requirements in presenting his claims to the state court is barred from obtaining a writ of habeas corpus in federal court if the procedural bar imposed by the state court was independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 729. Where such a procedural default constitutes an adequate and independent state ground for the denial of habeas corpus relief, the default may be excused only "if a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the

state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

The Supreme Court has also held that cause for a procedural default may arise from ineffective assistance of counsel in a petitioner's post-conviction proceeding. *See Martinez v. Ryan*, 132 S.Ct. 1309 (2012). The Court in *Martinez* held that, in collateral proceedings that provide the first occasion to raise a claim of ineffective assistance at trial, ineffective assistance of post-conviction relief (PCR) counsel in that proceeding may establish cause for a prisoner's procedural default of such a claim. *Martinez*, 132 S. Ct. at 1315. The Court stressed, however, that its holding was a "narrow exception" to the rule in *Coleman v. Thompson* that "an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Id*. The Court also took care to point out that the exception does not extend beyond claims that counsel was ineffective at trial. *See id*. at 1320. The Ninth Circuit has expanded the doctrine, however, to include claims that counsel was ineffective on direct appeal. *Nguyen v. Curry*, 736 F.3d 1287, 1295 (9th Cir. 2013).

### A. *Discussion*

Respondents argue that Grounds One through Four and Ten through Twelve are barred under the procedural default doctrine. Respondents argue that these claims are defaulted because, in ruling upon Aguilar's second habeas petition, the Nevada Supreme Court dismissed them as untimely under Nev. Rev. Stat. § 34.726 and successive under Nev. Rev. Stat. § 34.810.

///

In response, Aguilar does not dispute the adequacy or independence of either of the two procedural bars applied to his second state habeas petition. He argues, however, that Grounds One and Two are not defaulted because he or his co-defendant Gilbert Aguilar (petitioner's brother) presented them in their direct appeals to the Nevada Supreme Court, which the court consolidated. However, the direct appeal arguments Aguilar relies upon with respect to Ground One and Ground Two(A) are based entirely on state law and did not present the same federal law claims now alleged in his federal petition. (See dkt. no. 15-3 at 11-13; dkt. no. 15-4 at 26-29.) Ground Two(B) could not have been presented in Aguilar's direct appeal because the *Byford* decision was issued after the Nevada Supreme Court affirmed Aguilar's conviction.

Thus, Grounds One through Four and Ten through Twelve are procedurally defaulted and barred in this federal proceeding unless Aguilar can demonstrate that the defaults must be excused for one of the reasons outlined above.

Aguilar argues that his default of the ineffective assistance of counsel claims in Ground Twelve must be excused due to ineffective assistance of post-conviction counsel. To establish "cause" to overcome procedural default under *Martinez*, a petitioner must show:

> (1) the underlying ineffective assistance of trial counsel claim is "substantial"; (2) the petitioner was not represented or had ineffective counsel during the PCR proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required (or forced as a practical matter) the petitioner to bring the claim in the initial review collateral proceeding.

*Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (citing *Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013)).

Respondents do not dispute that the third and fourth prongs are met, but argue that Aguilar's underlying ineffective assistance of counsel claims are not substantial.

The Supreme Court in *Martinez* defined "substantial" in this context as meaning a claim that "has some merit." *Martinez*, 132 S. Ct. at 1318 (comparing the standard

for certificates of appealability from *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Stated inversely, a claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Id.* at 1319.

A claim of ineffective assistance of counsel (IAC) is examined under *Strickland v. Washington*, 466 U.S. 668 (1984), which means that a petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Under the first *Strickland* prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

As discussed above, Ground Twelve(B) alleges that appellate counsel was ineffective by failing to ensure that the Nevada Supreme Court applied the *Byford* decision to Aguilar's case before his conviction became final. Although *Byford* was issued after the Nevada Supreme Court had entered its order affirming his conviction, Aguilar notes, in Ground Twelve(B), that his conviction was not final until the time expired for him to petition the United States Supreme Court for a writ of *certiorari* (i.e., approximately twenty days after the issuance of *Byford*).

Even so, there is no reasonable probability that a *Byford* challenge would have altered the outcome of Aguilar's appeal. The Nevada Supreme Court held, in a decision issued a few months after *Byford*, that the then-new *Byford* instructions did not "have any retroactive effect on convictions which are not yet final: the instructions are a new requirement with prospective force only." *Garner v. State*, 6 P.3d 1013, 1025 (Nev. 2000). It was not until *Nika* that the Nevada Supreme Court determined that *Garner* was in error to the extent it held that *Byford* did not apply to convictions that were not yet final at the time the decision issued. *See Nika*, 198 P.3d at 1287.

Thus, Aguilar's counsel did not perform below the Strickland standard by not raising such a challenge. See Bullock v. Carver, 297 F.3d 1036, 1052 (10th Cir. 2002) (rejecting ineffective assistance claim based upon counsel's failure to predict future changes in the law and stating that "clairvoyance is not a required attribute of effective representation"). The ineffective assistance of counsel claim in Ground Twelve(B) is not "substantial" for the purposes of Martinez.

With respect to Ground Twelve(C)(1), Gilbert Aguilar raised a state law claim that the trial court erred by rejecting the proposed jury instruction as to evidence bearing on premeditation. (Dkt. no. 15-3 at 11-13.) That argument was rejected by the Nevada Supreme Court. (Dkt. no. 15-9 at 6-8.) Aguilar makes no showing that adding a federal law theory to the claim would have improved the claim's chance of success. The ineffective assistance of counsel claim in Ground Twelve(C)(1) is not "substantial" for the purposes of Martinez.[2]

Ground Twelve(C)(2-3) is also not substantial. As respondents point out, Aguilar's current challenge to the jury instructions on aiding and abetting and co-conspirator liability are based on case law that post-dates the finality of his conviction — i.e., Sharma in 2002 and Bolden in 2005. Here again, appellate counsel's performance must be assessed based on the law as it existed at the relevant time. See Bullock, 297 F.3d at 1052 (citing Strickland, 466 U.S. at 689).

In Ground Twelve(C)(4), Aguilar claims that appellate counsel was ineffective in failing to argue a violation of Aguilar's constitutional rights arising from the trial court's decision to require him to wear a stun belt during his trial. The claim faults the trial court for making its decision based upon ex parte information, failing to consider less restrictive alternatives, and failing to hold a hearing or make any factual findings on the record to determine whether the stun belt was actually necessary. At the time of

///

---

[2]For the same reason, Claim Twelve(A), wherein Aguilar argues that appellate counsel was ineffective for failing to "federalize" certain issues on direct appeal, is also not "substantial."

Aguilar's trial, however, such actions and/or omissions by the trial court were not recognized as infringing upon a defendant's rights. See *Deck v. Missouri*, 544 U.S. 622, 627-29 (2005) (discussing jurisprudence addressing the imposition of physical restraints at trial). Thus, Ground Twelve(C)(4) does not present a "substantial" ineffective assistance of counsel claim.

In Ground Twelve(C)(5), Aguilar claims that appellate counsel was ineffective in failing to argue on appeal that the trial court erred in rejecting Aguilar's *Batson* challenge to the prosecution's use of a peremptory challenge to exclude an African-American from the jury panel.[3] In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court established the principle that using peremptory challenges to exclude jurors on account of race violates the Equal Protection Clause. Trial courts must use a three-part test to evaluate a *Batson* claim:

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. [*Batson*,] 476 U.S., at 96-97. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. *Id.*, at 97-98. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767-768 (1995) (per curiam). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson, supra*, at 98. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett, supra*, at 768.

*Rice v. Collins*, 546 U.S. 333, 338 (2006) (parallel citations omitted).

In Aguilar's case, the prosecution articulated several reasons for excusing the juror, which the trial court found to be race neutral grounds. (Dkt. no. 14-3 at 49-54.) Aguilar accuses the trial court of not engaging in the third step of the *Batson* test. However, given that the trial court was satisfied with the prosecution's reasons for

---

[3]In opposing respondents' motion to dismiss, Aguilar refers to the prosecution striking *several* African American jurors for pretextual reasons. (Dkt. no. 61 at 15-16.) However, the allegations in Ground Twelve(C)(5) describe only one instance of such an occurrence.

striking the juror, it was up to *Aguilar* to demonstrate to the *trial court* that the strike was racially motivated. Because he never did so, the issue had virtually no chance of prevailing on direct appeal. Thus, the question whether appellate counsel fell below the *Strickland* standard by not raising the issue would not be debatable among jurists of reason. Ground Twelve(C)(5) is not "substantial" for the purposes of *Martinez*.

Finally, Aguilar seeks to have the default of his claims excused based on the same actual innocence argument he raises in relation to the timeliness of his claims. For the reasons discussed above, the Court declines to excuse his procedural defaults on that basis.

## IV.  STONE V. POWELL

Respondents argue that Ground Seven of Aguilar's second amended petition must be dismissed under *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court held that a Fourth Amendment claim is not cognizable in federal habeas actions if the petitioner had a "full and fair" opportunity to litigate the claim in state court. *Stone*, 428 U.S. at 481-82. Because Ground Seven raises an IAC claim, not a substantive Fourth Amendment claim, respondents' argument fails.

It is therefore ordered that respondents' motion to dismiss (dkt. no. 59) is granted in part and denied in part.[4] Grounds One through Four and Ten through Twelve are dismissed for the reasons set forth above.

It is further ordered that the respondents shall have forty-five (45) days from the date on which this order is entered to file an answer to the remaining claims in the second amended petition. Petitioner shall have forty-five (45) days from the date on which the answer is served to file a reply.

///

///

///

///

---

[4] Respondents request to strike certain exhibits from the record is denied.

It is further ordered that pending motions for extension of time (dkt. nos. 60 and 62) are granted *nunc pro tunc* as of their respective filing dates.

DATED THIS 22nd day of February 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE